UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
Gary LaBarbera and Frank Finkel, Trustees of
Local 282 International Brotherhood of Teamsters
Welfare, Pension, Annuity, Job Training and
Vacation Sick Leave Trust Funds,                                    REPORT &
                                                                    RECOMMENDATION
                                    Plaintiffs,                     CV-06-5022 (CPS)


                    -against-


T & M Specialties Ltd. and M. Fine Lumber Co. Inc.,

                                    Defendants.
-----------------------------------------------------------------X
GOLD, S., U.S.M.J.:


                            **Introduction**


        Plaintiffs, trustees of Local 282 Welfare, Pension, Annuity, Job Training and Vacation

Sick Leave Trust Funds (collectively, the "Funds"), bring this action pursuant to the Employer

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145.  They seek a

judgment to recover monies allegedly owed by defendants to several benefit funds for delinquent

contributions covering various time periods.  They also seek to recover interest, liquidated

damages, and attorney's fees and costs associated with the delinquent payments.

        Upon plaintiffs' application and in light of defendants' failure to appear in or otherwise

defend this action, the Clerk of the Court noted the default of the defendants on January 9, 2007.

Docket Entry 7.  The Honorable Charles P. Sifton then referred this case to me to report and

recommend on the amount of damages and other relief, if any, to be afforded.  Docket Entry 8.

Then, on February 26, 2007, plaintiffs indicated that the case had settled.  Docket Entry 11.  On

April 3, 2007, however, plaintiffs informed the Court that they wished to pursue their application

for entry of a default judgment because defendants failed to make payments in accordance with

the terms of the settlement.  Docket Entry 12.  I set a briefing schedule for plaintiffs' renewed application.  Docket Entry 13.  Finally, on June 29, 2007, defendant M. Fine Lumber Company, Inc. ("M. Fine Lumber") filed a Chapter 11 Voluntary Bankruptcy Petition, with the result that all proceedings in this case have been stayed against M. Fine Lumber.[1]  Docket Entries 18, 19.

## Discussion

### A.    Liability

Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability.  *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S. Ct. 1049 (1993); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992).  A court, however, retains the discretion to determine whether a final default judgment is appropriate. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).  Even after a defendant has

---

[1] Accordingly, throughout this Report, any reference to "defendant" refers to T & M Specialties, Ltd. ("T & M") only, and my recommendations are with respect to T & M only.  I note that plaintiffs' basis for seeking to impose joint liability against T & M and M. Fine Lumber is not clear.  *See* Compl. ¶ 6; *compare Olivieri v. P.M.B. Constr., Inc.*, 383 F. Supp. 2d 393, 404 (E.D.N.Y. 2005) (concluding that there is no ERISA liability for a joint employer who did not sign a collective bargaining agreement) *with Nat'l Pension Plan of Unite Here Works Pension Fund v. Westchester*, 2006 WL 2051107, at *12 (S.D.N.Y. July 21, 2006) (finding joint and several liability under ERISA for businesses under common control).  Nonetheless, it appears that T & M signed the agreements obligating it to make contributions to the Funds, and that the remittance report forms were submitted by T & M.  *See* Schreiber Aff. ¶¶ 3-6 and Exs. A-C, E, F.  Although it appears that the two companies have a close relationship – the T & M contributions were paid on corporate checks of M. Fine Lumber, both companies have the same address, and Louis Fine is the president of both, *see* Schreiber Aff. Exs. E, F, K, the default judgment against T & M may proceed despite the bankruptcy stay against M. Fine Lumber.  *See Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) (holding that the automatic bankruptcy stay does not extend to a non-debtor co-defendant where the liability of the non-debtor is based on its own breach of duty).  Moreover, no party has sought to stay the proceedings against T & M, even though M. Fine Lumber is represented by counsel in the bankruptcy case and bankruptcy counsel is aware of this case.  *See* Docket Entries 17, 18.

defaulted, "[a] plaintiff must . . . establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." *U.S. v. Ponte*, 246 F. Supp. 2d 74, 76 (D. Me. 2003) (citation omitted). *See also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action).

Plaintiffs have established the elements of liability required to state a claim pursuant to 29 U.S.C. § 1145 against defendant T & M Specialties Ltd. ("T & M"). Section 1145 provides:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

Plaintiffs allege that they are trustees of multiemployer benefit plans as defined by ERISA. Compl. ¶¶ 2, 3. Local 282 and T & M entered into a collective bargaining agreement ("CBA") for the period of July 1, 1999 through June 30, 2002, that required defendant to make contributions on behalf of its covered employees to the Funds. *Id.* ¶ 8. *See also* Schreiber Aff. ¶¶ 3, 6 and Ex. C.[2] The terms of the CBA, with minor changes not relevant here, remain in effect pursuant to two Memoranda of Agreement ("MOA") executed by Local 282 and T & M in 2002

---

[2] "Schreiber Aff." refers to the Affirmation of Avram H. Schreiber in Support of Plaintiffs' Claim for Damages, dated April 27, 2007, Docket Entry 14. Exhibit C to the Schreiber Affirmation is the CBA. I note that the name of the employer, the representative who signed the CBA on behalf of the employer and other information identifying the employer appears to have been redacted. Based on counsel's affirmation that Local 282 entered into a CBA with T & M for the period of July 1, 1999 through June 30, 2002 and because the 2005 Memorandum of Agreement extending the prior CBA is signed by the president of T & M, *see* Schreiber Aff. ¶ 3 and Ex. A, I presume that Exhibit C is a copy of the CBA that T & M entered into with Local 282.

and 2005. *Id*. ¶¶ 4, 5 and Exs. A, B. Defendant was thus obligated to make contributions to the Funds pursuant to the CBA and MOAs.

In their complaint, plaintiffs allege that defendant failed to make contributions due to the Funds for the period of March 26, 2004 through April 30, 2005. *Id*. ¶¶ 9, 10. Moreover, plaintiffs have provided a copy of an audit that found a deficiency in defendant's contributions for this time period. Schreiber Aff. Ex. E. Defendant's failure to make contributions as required constitutes a violation of ERISA, and defendant's liability to the Funds for contributions covering March 26, 2004 through April 30, 2005 has thus been established.

Plaintiffs also allege that interest, liquidated damages, and attorney's fees are due for defendant's late payments to the Funds for contribution periods from October, 2005 through August, 2006. Plaintiffs concede that T & M paid the principal due and owing for most of this time period before the suit was commenced. Schreiber Aff. ¶¶ 15-20, 23-24.[3] Plaintiffs are therefore not entitled to statutory damages with respect to any of these delinquent payments. *See Iron Workers Dist. Council of Western N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995) (explaining that to obtain one or all of the measures of relief set forth in 29 U.S.C. § 1132(g)(2), "the action must be one to enforce the obligation to pay contributions under § 1145, and therefore no such suit can be commenced in the absence of unpaid contributions"); *King v. Silver Streak*, 05-CV-1085 (SMG) (E.D.N.Y. Feb. 2, 2007), at 9. The CBA and MOAs, however, provide a contractual basis for the assessment of interest, additional damages, and attorney's fees in the event of untimely contribution payments. In their complaint, plaintiffs allege that defendant failed to pay

_____

[3] In two instances, contributions were due and owing when plaintiffs filed suit but were paid before plaintiffs moved for a default judgment. Schreiber Aff. ¶¶ 21-22.

4

delinquency charges for late contributions during this time period. Compl. ¶¶ 9-10. Thus, defendant's liability for damages for late payments for contribution periods covering October, 2005 through August, 2006 has been established.

Finally, in their complaint, plaintiffs seek "additional contributions and/or delinquency charges [which] may become due and owing" during the pendency of this action. Compl. ¶ 21. In their motion for default judgment, plaintiffs specifically seek unpaid contributions and damages based upon late payments for the contribution periods from September, 2006, which is when the complaint was filed, through February, 2007. Schreiber Aff. ¶¶ 25-33. Federal Rule of Civil Procedure 54(c) generally limits recovery on a default judgment to the relief sought in the complaint. Fed. R. Civ. P. 54(c) ("A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."). Rule 54(c) is not violated, however, where a court awards damages that accrued during the pendency of the litigation so long as defendant was put on notice in the complaint that plaintiffs might seek additional unpaid contributions that become due and owing. *See King v. STL Consulting, LLC*, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006); *Ames v. Stat Fire Suppression, Inc.*, 227 F.R.D. 361, 362 (E.D.N.Y. 2005). Here, defendant was served with both the complaint and plaintiffs' motion for default judgment, both of which included a request for unpaid contributions that became due and owing during this litigation. *See* Docket Entries 3, 15. Accordingly, I find that defendant had sufficient notice that it could be held liable for additional contributions, and I recommend that defendant be held liable for those contributions that accrued from September, 2006 through February, 2007.

B.     *Damages*

Although the allegations of a complaint pertaining to liability are deemed admitted upon

entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158. Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id.* A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. Plaintiffs have submitted an attorney's affirmation detailing plaintiffs' calculation of damages, the memoranda of agreement, portions of the relevant CBA, a Restated Agreement and Declaration of Trust, effective July 1, 1999, a letter concerning the amended interest rate effective October 28, 2003, a copy of the audit of defendant's records performed by certified public accountants, remittance report forms, and other documents pertinent to plaintiffs' application. Docket Entries 14, 15. Defendant has not submitted any opposition. Accordingly, a hearing on the issue of damages is not warranted.

    *1.    Unpaid Contributions*

    The damages recoverable for a violation of Section 1145 are enumerated in Section 1132(g)(2), which provides that

    the court shall award the plan–

        (A)  the unpaid contributions,
        (B)  interest on the unpaid contributions,
        (C)  an amount equal to the greater of–
            (i)  interest on the unpaid contributions, or
            (ii) liquidated damages provided for under the plan in an
                amount not in excess of 20 percent . . . of the amount
                determined by the court under subparagraph (A),

        (D)  reasonable attorney's fees and costs of the action, to be paid
             by the defendant, and
        (E)  such other legal or equitable relief as the court deems
             appropriate

29 U.S.C. § 1132(g)(2).

In September of 2005, plaintiffs, through a certified public accountant, conducted an audit of defendant's records for the period of March 26, 2004 through April 30, 2005. The audit revealed a delinquency total of $5,958.14 in unpaid contributions, composed of $4,200 for the Welfare Trust Fund, $841.20 for the Pension Trust Fund, and $916.94 for the Annuity Trust Fund. Schreiber Aff. Ex. E. Based on the audit, plaintiffs have established that the Funds are owed $5,958.14 in unpaid contributions for the period covering March 26, 2004 through April 30, 2005, and I recommend that the Funds be awarded this amount.

In addition, in their motion for default judgment, plaintiffs allege that defendant failed to make contributions that became due during the pendency of this litigation. Specifically, plaintiffs contend that defendant failed to make contributions totaling $27,547.41 for the period of December, 2006 through February, 2007. Schreiber Aff. ¶¶ 31-33. Plaintiffs have provided remittance report forms for this time period, apparently submitted by defendant, documenting the amounts owed. *Id*. Ex. F. Thus, plaintiffs have established that the Funds are owed $27,547.41 in unpaid contributions for the period covering December, 2006 through February, 2007, and I recommend that the Funds be awarded this amount.

Plaintiffs also allege that the checks received for the Pension and Annuity Funds covering October, 2006 contributions were returned for insufficient funds and that $3,994.03 remains due and owing. Schreiber Aff. ¶ 29 and Ex. J. Plaintiffs have provided copies of the returned checks totaling that amount. *Id*. Ex. J. Accordingly, plaintiffs have established that the Funds are owed

$3,994.03 in unpaid contributions for October, 2006, and I recommend that the Funds be awarded this amount.

The Funds seek interest at the rate of 18% per annum on the unpaid contributions enumerated above. For ERISA violations, Section 1132 states that interest is calculated "using the rate provided for under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Pursuant to the CBA and the amendments to the Restated Agreement and Declaration of Trust ("Trust Agreement"), incorporated by reference in the CBA, defendant owes interest at the rate of 1.5% per month, or 18% per annum. Schreiber Aff. ¶ 13 and Exs. C, D, G. Thus, I recommend that the Funds be awarded interest on all unpaid contributions at the rate of 18% per annum.

Plaintiffs, however, have not identified the date from which interest should begin to accrue. According to the CBA, contributions are due on the thirtieth day of the month following the end of the payroll period. *See* Schreiber Aff. Ex. C, p. 12. Thus, the contributions owed for March, 2004 became due on April 30, 2004, and the contributions for April 30, 2005 became due on June 30, 2005. Accordingly, I recommend that the Funds be awarded interest on the $5,958.14 beginning from November 30, 2004, which is the midway date for these unpaid contributions. *See* N.Y. C.P.L.R. 5001(b) (permitting the accrual of pre-judgment interest from a "single reasonable intermediate date" when damages are incurred over a period of time). Similarly, I recommend that the Funds be awarded interest on the $27,547.41 beginning from March 2, 2007, which is the intermediate date for the contributions due January 30, 2007 through March 30, 2007. Finally, I recommend that the Pension and Annuity Funds be awarded interest on the $3,994.03 beginning from November 30, 2006, the date that the October, 2006 contributions became due. The amount of interest on these contributions should be calculated by

the Clerk of the Court from the dates indicated above through the date final judgment is entered.

The Funds also seek liquidated damages. Section 1132(g)(2)(C) provides for liquidated damages in an amount equal to the *greater* of interest on unpaid contributions, or an amount provided for in the governing plan not to exceed 20% of the delinquent contributions. 26 U.S.C. § 1132(g)(2). The Trust Agreement provides for liquidated damages in the amount of 20% of the unpaid contributions. Schreiber Aff. ¶ 13 and Ex. D, p. 31. Twenty percent of the $37,499.58 in unpaid contributions amounts to $7,499.92. As of today's date, this amount is greater than the interest owed, and I therefore recommend that the Funds be awarded liquidated damages in the amount of 20% of the unpaid contributions.[4]

### 2. Contributions Paid Late

As discussed above, the CBA, MOAs, and Trust Agreement establish the damages for the contributions that were paid late but paid before this lawsuit was filed. The Trust Agreement provides for interest at the rate of 18% per annum, or .049% per day, and liquidated damages equal to the interest or 20% of the principal, whichever is greater. Schreiber Aff. Ex. D, pp. 30-31, and Ex. G. The following table reflects the Court's calculations of interest and liquidated damages for the contributions paid late[5]:

---

[4] Calculating interest through September 30, 2007, the Funds would be entitled to a total of $6,530.23 in interest. On the principal of $5,958.14, the Court calculates the interest as $3,038.65 (5,958.14 x .015 x 34 (number of months pending)). On the principal of $27,547.41, the Court calculates the interest as $2,892.48 (27,547.41 x .015 x 7 (number of months pending)). On the principal of $3,994.03, the Court calculates the interest as $599.10 (3,994.03 x .015 x 10 (number of months pending)). I also note that there is a mathematical error in plaintiffs' calculation of the 20% liquidated damages due owing on this last amount. They incorrectly calculated 20% of $3,994.03 as $2,210.60. Schreiber Aff. ¶ 29.

[5] The Court has found two errors in plaintiffs' calculations. First, for the December, 2005 contributions, plaintiffs calculated $218.33 in interest, whereas the Court calculates $218.50 in interest. Second, for the July, 2006 contributions, the Court calculates 104, not 105, days of

| Pay Period | Principal owed | Date originally due | Date payment made[6] | Days delinquent | Interest | LD (20%) |
|---|---|---|---|---|---|---|
| 10/05 | 6,900.00 | 11/30/05 | 3/21/06 | 111 | 375.29 | 1,380.00 |
| 10/05[7] | 328.32 | 11/30/05 | 4/13/06 | 134 | 21.56 | 65.66 |
| 11/05 | 10,213.65 | 12/30/05 | 3/15/06 | 75 | 375.35 | 2,042.73 |
| 12/05 | 10,370.09 | 1/30/06 | 3/14/06 | 43 | 218.50 | 2,074.02 |
| 12/05 | 749.23 | 1/30/06 | 4/13/06 | 73 | 26.80 | 149.85 |
| 1/06 | 8,421.68 | 3/2/06 | 3/14/06 | 12 | 49.52 | 1,684.34 |
| 2/06 | 6,000.00 | 3/30/06 | 12/12/06 | 257 | 755.58 | 1,200.00 |
| 3/06 | 6,000.00 | 4/30/06 | 12/12/06 | 226 | 664.44 | 1,200.00 |
| 4/06 | 7,680.00 | 5/30/06 | 7/19/06 | 50 | 188.16 | 1,536.00 |
| 5/06 | 8,418.41 | 6/30/06 | 7/21/06 | 21 | 86.63 | 1,683.68 |
| 7/06 | 9,433.30 | 8/30/06 | 12/12/06 | 104 | 480.72 | 1,886.66 |
| 8/06 | 13,443.22 | 9/30/06 | 11/27/06 | 58 | 382.06 | 2,688.64 |
| 9/06 | 10,947.71 | 10/30/06 | 1/26/07 | 88 | 472.07 | 2,189.54 |
| 10/06 | 4,812.80 | 11/30/06 | 2/20/07 | 82 | 193.38 | 962.56 |
| 11/06 | 11,053.01 | 12/30/06 | 2/23/07 | 55 | 297.88 | 2,210.60 |
| **TOTAL** | | | | | 4,587.94 | 22,954.28 |

delinquency and accordingly finds that the interest owed is $480.72.

[6] The date on which payment was made is taken from the Schreiber Affirmation in Support of Plaintiffs' Claims for Damages.

[7] For October and December, 2005, plaintiffs allege a discrepancy in the principal amounts that defendant owed. Schreiber Aff. ¶¶ 16, 19. Although plaintiffs have failed to provide the underlying documentation explaining how they calculated the discrepancies, the assertions are made in their attorney's affirmation. As the representations were made by an officer of the court and involve small amounts, I accept plaintiffs' representations as true and I recommend that they be awarded the delinquency charges associated with these amounts.

Accordingly, I respectfully recommend that the Funds be awarded a total of $4,587.94 in interest and a total of $22,954.28 in liquidated damages on the contributions that were paid late.

C.      *Attorney's Fees and Costs*

The Funds are also entitled to recover their reasonable attorney's fees and costs. Upon a finding that defendant has been delinquent in paying contributions, liability for attorney's fees related to the litigation is mandatory under Section 1132(g)(2). *See Iron Workers Dist. Council of Western N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995). Additionally, as discussed above, defendant is liable for attorney's fees incurred for late payments pursuant to the terms of the CBA and the Trust Agreement. Screiber Aff. Ex. D, p. 30.

All claims for attorney's fees in the Second Circuit must comply with *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983), which requires that contemporaneous time records be submitted with all fee applications. Plaintiffs have submitted an attorney's affirmation and supporting contemporaneous time records. Schreiber Aff. and Ex. L. The Funds seek reimbursement for $16,242.34 in attorney's fees for 110.80 hours of work billed at the following rates: $275 per hour for a partner with more than thirty years experience; $200 per hour for an associate; and $70 per hour for paralegal work. *Id*. The hourly rates and time expended appear reasonable and I recommend that the Funds be awarded $16,242.34 in attorney's fees. In addition, plaintiffs seek $641.28 in costs for copying, postage, filing, and service. *Id*. This amount is reasonable and compensable and I recommend that plaintiffs be awarded their costs. *See Morin v. Nu-Way Plastering Inc.*, 2005 WL 3470371, at *4 (E.D.N.Y. Dec. 19, 2005) (awarding costs for filing fees, service of process fees, and

postage). Finally, plaintiffs seek $660 for the September, 2005 audit and $150 in administrative fees for the bounced checks for the October, 2006 Pension and Annuity Funds. Schreiber Aff. ¶¶ 14, 29. I recommend that the Funds be awarded these costs as well. Thus, I respectfully recommend that plaintiffs be awarded a total of $17,693.62 in attorney's fees and costs.

D.      *Effect of Settlement*

As noted above, plaintiffs and defendants entered into a settlement agreement in this action in February, 2007. Schreiber Aff. ¶ 34 and Ex. K. The parties agreed to settle the action for a total of $51,920.13. *Id*. Pursuant to the terms of the settlement agreement, defendants' first payment was to be $26,111.57 due on February 16, 2007. *Id*. In addition, defendants were to make 17 weekly installments of $1,500 beginning March 2, 2007 with a final payment of $1,808.56 due on June 22, 2007. *Id*. Defendants, however, remitted the first payment for only $19,859.84, and $3,994.03 of that amount was returned for insufficient funds. *Id*. ¶ 35; *see also* Schreiber Aff. ¶ 29 and Ex. J. Then, on March 9, 2007, defendants submitted 2 checks for $1,500 each, which were also returned for insufficient funds. Schreiber Aff. ¶ 37 and Ex. E. Plaintiffs do not state whether any further payments have been made by defendants. In their application for damages, plaintiffs have credited defendants for the principal due for the periods of October and November, 2006 based on defendants' February 16, 2007 partial payment pursuant to the settlement. Schreiber Aff. ¶¶ 28, 30. Thus, it appears that plaintiffs have fully credited defendant for all payments made pursuant to the settlement agreement. Accordingly, the Funds should be awarded the full amount discussed above, assuming that they accounted for all payments received. Plaintiffs are directed to confirm during the time allowed for objections to this Report and Recommendation that they have not received additional funds from defendant in

partial payment of the amounts discussed above.

## Conclusion

For the reasons stated above, I respectfully recommend that the Funds be awarded $37,499.58 in unpaid contributions, and that the Clerk of the Court calculate interest on these unpaid contributions at the rate of 18% per annum, beginning from the following dates to the date of entry of judgment:

| Principal | Date from which interest accrues |
| --- | --- |
| 5,958.14 | November 30, 2004 |
| 27,547.41 | March 2, 2007 |
| 3,994.03 | November 30, 2006 |

I also recommend that the Funds be awarded liquidated damages on these unpaid contributions in the amount of $7,499.92.

Next, I recommend that the Funds be awarded a total of $4,587.94 in interest and $22,954.28 in liquidated damages on the payments that were made late.

Finally, I respectfully recommend that plaintiffs be awarded $17,693.62 in attorney's fees and costs.

Any objections to this Report and Recommendation must be filed within ten days of this Report and in any event no later than September 25, 2007. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d

15, 16 (2d Cir. 1989).  Plaintiffs are hereby directed to serve copies of this Report and

Recommendation upon defendant at its last known address, and to file proof of service with the

Court.

_____/s/_____
**STEVEN M. GOLD**
**United States Magistrate Judge**

**Brooklyn, New York**
**September 11, 2007**